# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

FILED
2014 NOV 12 PM 4: 06
CLERK US DISTRICT COURT
NORTHERN DISTRICT OF OHIO

Shane M. Roush #613-045
North Central Correctional Complex
P.O. Box 1812
Marion, Ohio 43301

3:14 CV 2490
COMPLAINT

42 U.S.C.S. 1983

vs.

Dr. Al Talbert et., al.,
Dr. Stine,
Dr. Kong,
C. Burke NP-C,
Dr. Keaton,
Ms. Schuler MTC Institutional Inspector,
Ms. Cain, TOCI Institutional Inspector & NCCC/MTC Budget Control Officer,
Dr. Pine TOCI Doctor
Ms. Burkin TOCI Institutional Health Care Administrator,
Management Training Corporation (MTC),
Management Training Corporation Chief Operations Officer Jane and John Doe,
Ms. Donahue Health Care Administrator Budget Control Officer,
MTC Collegial Review Committee, Jane and John Doe
Mr. Gary Mohr Ohio Department Of Rehabilitation and Corrections Director,
ODRC Collegial Review Panel - Jane and John Doe,
Mona Parks ODRC Chief Nurse/ Chief Inspector ODRC,
        Defendants.

JUDGE ZOUHARY

MAG. JUDGE JAMES R. KNEPP II

## JURISDICTION AND VENUE

1. Plaintiff institutes these proceedings and invokes the jurisdiction of the court under and by virtue of 28 U.S.C. 1343 to obtain the cost of suite, and damages suffered by plaintiff and caused by defendants' violation of his rights as guaranteed in the Eighth and Fourteenth Amendments of the Constitution of the United States and federal law, particularly 42 U.S.C. 1983.

2. This court has jurisdiction of this action under 28 U.S.C. 1331, in that the matter in controversy arises under the Eight and Fourteenth Amendments of the Constitution of the United States of America.

3. The violation of plaintiff's rights was committed within the State of Ohio Both at TOCI and NCCC/MTC.

PARTIES

4. Plaintiff, Shane M. Roush is a citizen of the United States of America and was at all times relevant herein an inmate of the Ohio Rehabilitation and Corrections and Management Training Corporation, a private prison operated by contractors adherent,and adherent to State policy and under the Contract/agreement with the State to operate using authorized State law and implemented ODRC policy's.

5. Defendant Gary Mohr Ohio Department of Rehabilitation and Corrections director was at all times relevant herein was a resident of the state of Ohio authorizing MTC to operate under his direction and policy's.

6. Upon information and belief, defendant Dr. Talbert, Dr. Kong, NP-C Burke, Dr. Keaton, Dr, Stine, Ms. Donhaue, MTC Chief Operations Officer,

Management Training Corporation, Medical Consult Request Collegial Review Committee Members ( Jane and John Doe) and aforementioned defendants Acted under Color of state law and at all times where relevant residents of The United States.

7. All defendants are sued individually and in their official capacity. Relief is sought against each and all defendants as well as their agents, successors, employees and persons acting in concert or cooperation with them or at their direction and under their supervision and training and policy's that are believed to be in conflict with Constitutional law.

8. At All times relevant herein, the defendants and their agents, successors, employees and persons acting in concert or cooperation with them or at their direction or under their supervision and training acted pursuant to the policies, regulations or decisions officially adopted or promulgated by those in the ODRC whose acts may fairly be said to represent official policy or were pursuant to governmental custom of the ODRC.

9. At all times relevant herein, defendants have acted under the color of authority of the law of Ohio or in active concert with defendants who are so acting.

10. On or about August 2004 plaintiff (A free Citizen at that date) was diagnosed with degenerative disk disc and herniated disc's in which he received surgery's (fusion of disc, Pins and Rods). After these surgery's plaintiff was informed after a follow-up visit and complaints of pain, that his surgery's didn't go as well as the doctor's expected. Plaintiff received an MRI that revealed these findings. Plaintiff's diagnoses was bleak and the only relief available to plaintiff at the time was medication to control the pain.

11. On or about October 21, 2010 plaintiff, prior to state incarceration(during arrest) for the incarcerated charge was shot in the legs, and suffered a broken and mangled right leg and broken/shattered left heal bone, was hospitalized, received surgery's at the Grant medical Center and was informed he would need further surgery's because the bone graph, rods and pins received didn't correct the injury's. Plaintiff was released to the custody of the Marion Tri-County Jail for trial, received treatment for pain, followups and understood with the doctor's then that he would need many more surgery's to correct the injury's sustained.

11. Plaintiff was then found guilty and sentenced to Toledo Ohio Correctional Center ( TOCI an ODRC operated prison).

12. Once incarcerated at TOCI plaintiff attempted to have medical staff Dr. Pine Dr. Burkin and Ms. Cain treat his chronic back and leg pain and request his medical records from the hospital's that did his back surgery's, and surgery's on plaintiffs legs and heel, this has never happened to date and plaintiff has been denied repeatedly for treatment of his condition's.

13. While at TOCI plaintiff requested to receive medical care to correct the prior bone graph and management for pain, was continually denied the follow up care recommended by the Grant Medical Center whom performed the first surgery's and filed informal Complaint's to Ms. Cain, Grievance's, and Appeal's to the ODRC Chief Inspector Mona Parks to no avail.

14. Plaintiff was then transferred to MTC/NCCC. Upon arriving to the privately operated

prison authorized by the state, ODRC and in contract with such, applied to be seen by the aforementioned defendants via Health Care Request forms (HCR's) to the same results.

15. Plaintiff ultimately seen Dr. Talbert after being referred to mutable doctor's within the institution but never a consult request with an outside orthopedic specialist. On or about January 2014 Dr. Talbert ordered an MRI (although plaintiff had one on record at the Grant Medical Center that the institutional doctor's refused to order). to see what course of treatment could be provided to plaintiff to help with the immobility and pain plaintiff suffers while walking, sitting and standing and to attempt to correct the deformity of plaintiffs leg and heal.

16. The MRI ordered by Dr. Talbert was only ordered due to plaintiffs remarks that he would file a complaint with the courts. The MRI was approved for plaintiffs legs and heel back in January 2014 and plaintiff received the MRI on or about July 25, 2014 (a 6 month delay) in which plaintiff asserts that the entire time he suffered in pain awaiting testing, was denied a wheelchair, medications or any orthopedic shoes and brace's.

17. Plaintiff recently received a mild pain relief medication 300mg Nuroton 3X per day but has to rely on Ibuprofen and Tylenol( 24 pills a day to even mildly help with pain) that plaintiff has to buy with his own money and has effected plaintiffs liver.

18. Plaintiff never received treatment for the aforementioned problems after multiple,complaints, request and grievances and appeals to the Medical Inspector (Mona P)arks and requested to have this surgery performed where it was delayed and ultimately denied.

-5-

19. Plaintiff was told time and time again that "There is nothing an orthopedic specialist could do". An unlikely determination by a general physician. Nor did defendants attempt to treat plaintiffs pain.

21. The standard medical treatment for the above described condition is surgical intervention and treatment for pain. **(2009 Standard Medical Treatment Procedure's Physician Desk Reference).**

20. On August 27, 2014 plaintiff was seen again by Dr. Talbert for the MRI test results and requested to be referred to see a specialist and was told "He would write a consult but that it may not be approved". Plaintiff contends that Dr. Talbert never had any intention to file such consult request to see a specialist and is a common practice to delay or deny care. Plaintiff believes this is a violation of his Constitutional rights, a deliberate delay and blatant refusal to treat plaintiffs condition. Defendant Dr. Talbert, Dr Stine and Dr. Keaton responded to repeated request to see a specialist by saying "A Specialist will tell you the same thing as we are telling you", "That there is nothing they can do to help with your ailment", "And if the pain persists and worsens you have the option of amputation of your right leg and left foot". Plaintiff disagrees due to prior doctors before transferring to NCCC informing him he would need more surgery's to fully recover from his injury's and any delay could result in unrepairable damage.

21. Plaintiff also believes that as general treating physicians at NCCC they don't have the qualified education to treat an orthopedic ailment or to determine as weather or not plaintiff needs a surgery or a specialist consult.

22. Dr. Kong refuses to intervene for his on fear of being ostracized and ultimately fired due to the history's of other treating physicians (Dr. Bell and Dr. Kovack) who where fired due to there filing of too many outside consults and helping inmates receive the proper stranded of care).

23. Defendants Talbert, Stine, Kong, Burke, and Keaton knew plaintiffs medical condition and the results of the testing, but rather order the surgical treatment and help to relieve plaintiffs pain and advocate for the same, they refused to order the necessary surgery and medication's. Defendants constant refusal made it highly foreseeable that plaintiff would continue to suffer and pose a substantial risk to the inmates health and safety.

24. Defendants Donahue (HCA) Schuler, Mona Parks, Gary Mohr and MTC/NCCC acted with deliberate indifference to plaintiffs medical needs and are aware of plaintiffs medical need because of the informal complaint's, grievance's, and appeals, filed to them, requesting intervention, but rather then advocate for the requested surgery and pain management defendant's refused to step between the treating doctors decisions and relied on the often used statement "That the contract doctors at the institution are responsible for the day to day decisions treating inmates and they believe plaintiff is receiving the proper treatment therefore we won't intervene". A Legal question is then what is the position of their employment if not to advocate for the plaintiff, and if to error at least error on the right side of the Hippocratic Oath, law and Constitution?

25. Ms. Schuler MTC institutional inspector was aware of the substantial risk to the plaintiff's safety and also refused to intervene when the plaintiff filed the grievance with her. Defendants knew or should have known that the continued refusal to authorize surgical intervention would cause plaintiff to continue suffering and pose a substantial risk to the inmates safety and health.

26. Defendant Ms. Burken and Ms. Cain denied plaintiff care when he was a TOCI inmate. Ms. Cain was recently employed at MTC/NCCC as a budget control specialist for the medical department to limit as much as possible outside consults, testing, pain medications, and lawsuits, working in collaboration with Dr. Keaton, Dr. Stine, NP-C Burke, Dr. Kong and MTC/NCCC administration. Ms. Cain is considered to be a substantial source due to her prior employment with TOCI /ODRC and a prior defendant in many civil claims ( Lexis Nexis). The overall position of her employment was profits over prisoner care. Ms. Cain and Ms. Burken known or should have known that a substantial risk to plaintiffs health and safety existed.

19. Mona Parks general practice nurse and Chief Medical Inspector was also aware of the plaintiffs condition through the filing of the plaintiffs appeal to her, and rather then advocate for the surgical intervention she refused to order the specialist consult or intervene in the denial of the consult request. As a general practice nurse and a member of the ODRC collegial Review Panel, her duty as a member of that panel is to review institutional doctor consult request to determine weather an inmate is a candidate for the consult. As a sitting member of this panel she has denied to order the institution MTC/NCCC to send plaintiff for the orthopedic consult, or any intervention to treat

plaintiff's ailment. Plaintiff believes two Constitutional questions arise **(B)** Is Defendant Mona Parks, Gary Mohr (also a member of this panel), and The ODRC Collegial Review Panel qualified to make the determination as to weather an inmate be provided an institutional ordered doctor consult request? Mona Parks is a General Practice Nurse and Gary Mohr the Director of the ODRC. This naming of defendant Mona Parks arises not because she was involved in the grievance process but rather she denied plaintiff care by being directly involved in the process and failed to intervene and is employed as the Chief Medical Officer for the ODRC and all medical request/appeals go through her office. Gary Mohr is the director of the ODRC and not medically trained.

20. Remaining Panel member's are general employee's and none are medically trained or physicians of any type and it's highly unlikely that a review panel meets everyday to determine whether or not to intervene in an inmate's care.

**B.)** Is Defendant Mona Parks, Gary Mohr, and The ODRC Collegial Review Panel qualified to make the determination to intervene in the institutional medical grievance's and appeals? (Other then the above aforementioned (A)). None of the panel members personally assessed the plaintiff ? (Nor thoroughly investigated plaintiffs file, for if they did they would see the recommended follow up treatment in the plaintiffs file by the surgical doctors that performed the first surgery's). The Chief Inspector Parks often states in the response to the appeal filed to her "I reviewed your file". The files she refers to are kept at NCCC and are all paper files that never leave the institution. There has never been a time when plaintiffs file was sent to the ODRC office in Columbus, Ohio, nor are there computer files of plaintiffs other then outside test results.

The Collegial Review Panel never reviewed plaintiffs file or physically assessed the plaintiff and yet made the determination to not intervene. Defendants knew or should have known that the continued refusal to authorize surgical intervention would cause plaintiff to continue suffering and pose a substantial risk to the inmates safety and health.

21. There is a pre-formatted response from the Chief Inspectors office to limit as much as possible liability, specificity on Mona Parks, it reads in part " The medical doctor at your institution is licensed individual and responsible for the day to day care, and it appears that they are providing that care". If an actual investigation was in-fact performed it would clearly show a need for intervention.

22. What is defendant Mona Parks Medical inspectors job if not to advocate or intervene when a serious risk to plaintiffs health and safety exists? Defendant often relies on this statement to limit as much responsibility and civil claims wherein she has been dismissed 90% of the time. (Lexis Nexis).

23. Plaintiffs medical records indicate he has a condition that needs surgical intervention and even a lay person can determine plaintiff is in desperate need of the surgery's and treatment for his chronic pain. Plaintiff also contends that it is common practice to refuse to treat offenders at NCCC for NCCC is a Private prison operating for a profit and it has been profits over all else. In fact the most grieved issue at NCCC has been the medical department and staff refusing treatment. The State Inspectors Office came into the institution recently and found "Major violations with the Medical department and staff". (See enclosed letter from attorney Pat Horner's office).

24. Management Training Corporation known or should have known that their employees where operating in violation of Constitutional law and in place relying on vague ODRC institutional policy's that are often violated, and in conflict with the immunity's guaranteed to plaintiff by the Constitution of the United States an have been in this instant case.

25. Management Training Corporation Chief Operations Officer known should have known by their repeated inspections and the inspections of State and Government official's that the institution was in violations of law and deprivation of plaintiffs Constitutional rights.

26. All defendants in their official and individual capacity's use crafty common sophism practices to go as far to order specialist consults that they themselves deny through the collegial review committee and collaboration of meetings to deny the testing and surgical intervention. Who's sole objective is to limit as much as possible consults and treatment due to budgetary concerns in hopes that the inmates will not file a civil claim, and if inmates do so, show the court that they where attempting to provide care, then file a defense summery motion in hopes of having the case dismissed.

27. Defendant Ms. Cain was a prior state ODRC employee at TOCI( Institutional Inspector) where plaintiff was housed prior to his transfer to MTC/NCCC where she is now employed as a budget control specialist assisting the institution, ODRC and MTC control spending in the Medical Department and to limit as much as possible liability claims. This is the specialist Attorney Pat Horner is speaking of in the enclosed letter.

Attorney Horner has a pending class action claim in the Ohio Court Of Claims on NCCC/MTC medical department.

28. Defendants Mohr, Parks, Schuler and the ODRC Collegial Review Committee were aware of plaintiff's medical condition and his request, and need for surgical intervention because plaintiff appealed defendants Talbert Stines, Donahue, decision's through the ODRC, MTC/ NCCC grievance procedure. He has exhausted the administrative procedure and was not granted relief which caused and excessive risk to plaintiff's health and safety. Defendants consistent refusal of surgery made it highly foreseeable that plaintiff's diagnoses would continue to deteriorate.

29. There are other Constitutional question's raised that plaintiff respectfully request this honorable court address in it's memorandum.

**Question 1-** Is Defendant Mona Parks, Gary Mohr and Jane and John Doe (Defendant's of the collegial review panel) qualified to make decisions effecting plaintiffs care? Plaintiff asserts that Mohr and Parks are part of this panel and not medically certified nor was plaintiff assessed by any members of the said panel.

30. **Question 2-** Mona Parks general practice nurse and Medical Chief Inspector is appointed to this Collegial Panel to also determine whether or not to intervene when an inmate files a medical grievance to her office. If Parks is appointed the position as Chief Medical Inspector to advocate the care or intervention of care when an institutional doctor refuses to treat patient's such as plaintiff in this instant case, is Parks culpable and liable for the Constitutional deprivation?

-12-

31. Parks is not named in this suit for the denial of plaintiff's grievance but rather Parks is employed as CMI whose sole job is to intervene and or approve consult request.

32. On October 9, 2014 plaintiff received a pass to medical and seen the prosthetic doctor and believes that this was due to the medical department learning plaintiff is filing a complaint with this court soon. Plaintiff was told that they have ordered brace's and orthopedic shoes. Plaintiff again requested to see an orthopedic surgeon and was denied. The Braces are an attempt to stabilize plaintiffs right leg and left heel from deteriorating further but it is only corrective surgery that will help. Plaintiff also asserts that this is a futile attempt to show this court that there was some attempt to help, but after 4 years of pleading, grievances and the learning plaintiff is filing a civil complaint did this action take place. A clear indication of a delay of medical care and deliberate indifference.

33. Defendants acted with deliberate indifference to plaintiff's medical needs, to his increasing pain and to his present and future health. The acts of defendants, and each of them, subjected plaintiff to cruel and unusual punishment in violation of the Eight and Fourteenth Amendment of the United States Constitution and have caused plaintiff to suffer damages in the amount of $5 million dollars.

**WHEREFORE,**

Plaintiff request to this honorable court to:

A. Permanently enjoin defendant's in their official and individual capacity, their agents, assistants successors, employees and persons acting in concert or cooperation with, from further violating his Constitutional rights, privileges and immunity's guaranteed to the plaintiff and mandate for the surgical intervention afflicting the plaintiff and/or other appropriate medical intervention.

B. Grant compensatory damages to plaintiff in the amount of $5 million dollars against defendants in their individual capacities, jointly and severally, for the years of unnecessary pain and suffering inflicted upon plaintiff;

C. Grant punitive damages in the amount of $1 million dollars against defendants in their individual capacities, jointly and severally.

Respectfully Submitted,

*Shane M. Roush*
SHANE M. ROUSH(#613-045)
North Central Correctional Complex
P.O. Box 1812
Marion, Ohio 43301